IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| Vernon Jermaine Mills,<br>    Plaintiff, | )<br>)<br>) |
| v. | )   No. 1:23-cv-149 (RDA/WEF) |
| | ) |
| Harold Clarke, *et al.*,<br>    Defendants. | )<br>)<br>) |

## MEMORANDUM OPINION

Vernon Jermaine Mills ("Mills" or "Plaintiff"), a Virginia inmate proceeding *pro se*, filed a civil rights complaint pursuant to 42 U.S.C. § 1983, alleging that defendants violated his constitutional rights while he was detained at the Lawrenceville Correctional Center ("LVCC"), Lawrenceville, Virginia because religious services were cancelled, and he was not provided with religious meals at the appropriate time. Dkt. 1. Mills's application to proceed *in forma pauperis* was granted on August 2, 2023, but before his complaint was screened, 28 U.S.C. § 1915A, Mills filed a motion for leave to amend, which the Court granted, and he filed his first amended complaint ("FAC") on September 7, 2023. The FAC named five defendants—Harold Clarke, Director of the Virginia Department of Corrections ("VDOC"); Global Experts and Outsourcing, Inc. ("GEO"), a contractor that oversees the operation of the Lawrenceville Correction Center ("LVCC"); Esker Tatum, Warden of the LVCC; Donald Hicks, Unit Manager of the LVCC; and Jennifer Walker, Head Food Service Supervisor of the LVCC—and alleged that the defendants violated his First Amendment rights and the Religious Land Use and Institutionalized Persons Act

(RLUIPA), *see* 42 U.S.C. §2000cc *et seq.*; and that Defendant Hicks also violated his Eighth Amendment rights.[1] Dkt. 12 at 2, 6-7.

On January 24, 2024, the Court screened Plaintiff's FAC to determine whether it was frivolous, malicious, or failed to state any claims upon which relief may be granted. The Court found deficiencies, explained pleading requirements, and allowed Plaintiff to file a second amended complaint ("SAC"). Dkt. 20. On February 29, 2024, Mills filed his SAC, which alleged that Defendant Hicks violated his rights under RLUIPA. Dkt. 23 at 5-7. Mills sought $30,000 in compensatory damages, $30,000 in punitive damages, and injunctive relief to prevent denial of the weekly Jumu'ah services. *Id.* at 7.

On May 8, 2024, the Court attempted service on Defendant Hicks, in accordance with the April 30, 2020 Agreement on Acceptance of Service between the Clerk of this Court and the Office of the Attorney General for the Commonwealth of Virginia. Dkt. 26. On June 6, 2024, the Attorney General responded and advised the Court that Defendant Hicks was not an employee of the Commonwealth of Virginia and that it appeared that Defendant Hicks was "an employee of GEO Group, Inc.," a contractor, and that "the Office of the Attorney General of Virginia" would not be representing Defendant Hicks. Dkt. 27. On June 7, 2024, the Court again attempted service on Defendant Hicks by sending him a Notice of Lawsuit and Request for Waiver of Service of Summons ("Notice"). Dkt. 28. On August 28, 2024, after receiving no response to the Notice, the Clerk issued a summons, to be served by the United States Marshall Service ("USMS"). Dkt. 32. Personal service failed. Dkt. 36. The Court obtained a current address for Defendant Hicks, and the Clerk again issued a summons (Dkt. 42) and the USMS filed the return on August 27,

---

[1] After the FAC was filed, a Report of Violation of Consent Order was filed on September 25, 2023. Dkt. 13. The Court entered a show cause order on September 27, 2023. Dkt. 15. Mills responded and the matter was subsequently resolved by Plaintiff paying the balance of his fee.

2

2025. Dkt. 44. The Court entered an order on September 3, 2025, directing Hicks to file an answer or responsive pleading within thirty days. Dkt. 45. Hicks has not responded, and on October 21, 2025, Mills filed a Declaration for Entry of Default Judgment. Dkt. 46. After review of the pleadings in this matter, this Court finds that this matter must be dismissed for lack of jurisdiction.

## I. Second Amended Complaint

Mills's SAC alleges that Defendant Hicks, during specific dates during March and April of 2022, violated his "rights under RLUIPA" by (1) failing to accommodate his observance of Ramadan by denying pre-dawn meals (Sahŭr) for provision of fasting, (2) denying Mills access to attend weekly Jumu'ah prayer services, (3) denying Mills access to the annual Eid-Al Fitr prayer service and feast, (4) making false statements regarding accommodations made for Ramadan, access to Jumu'ah services, and Mills's ability to observe Eid celebrations, and (5) denying Mills access to mandatory to mandatory religious practices integral to the Muslim faith. Dkt. 23 at 5, 6. Plaintiff asserts that this substantially burdened Plaintiff's religious exercise without furthering a compelling governmental interest by the least restrictive means. *Id.*

## II. Jurisdiction, Default, and Mootness

Whether to grant default judgment is within the court's discretion. *See United States v. Moradi*, 673 F.2d 725, 727 (4th Cir. 1982). Notwithstanding the appropriateness of the entry of default judgment in some circumstances, "'entry of a default judgment is not automatic'" because "the procedural posture of a default does not relieve a federal court of its 'affirmative obligation' to determine whether it has subject matter jurisdiction over the action." *Braun v. Islamic Republic of Iran*, 228 F. Supp. 3d 64, 74 (D.D.C. 2017) (first quoting *Mwani v. Osama Bin Laden*, 417 F.3d 1, 6 (D.C. Cir. 2005) (footnote omitted); then quoting *James Madison Ltd. by Hecht v. Ludwig*, 82 F.3d 1085, 1092 (D.C. Cir. 1996)); *see also United States v. Springer*, 715 F.3d 535, 540 (4th Cir. 2013) (recognizing mootness may be raised *sua sponte*; and the "mootness doctrine is a limitation

3

on federal judicial power grounded in the 'case-or-controversy' requirement of Article III of the U.S. Constitution"). "[W]hen entry of a default judgment is sought against a party who has failed to plead or otherwise defend, the district court has an affirmative duty to look into its jurisdiction both over the subject matter and the parties." *Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1203 (10th Cir. 1986);[2] *see Jerez v. Republic of Cuba*, 775 F.3d 419, 422 (D.C. Cir. 2014) ("A default judgment rendered in excess of a court's jurisdiction is void." (citing *Bell Helicopter Textron, Inc. v. Islamic Republic of Iran*, 734 F.3d 1175, 1181 (D.C. Cir. 2013))).

A determination of jurisdiction begins with the constitutional limitation of the jurisdiction of federal courts, which requires a dispute involving a "case" or "controversy." U.S. Const. art. III, § 2, cl. 1; *Raines v. Byrd*, 521 U.S. 811, 818 (1997). The Supreme Court has recognized that "[n]o principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." *Simon v. E. Kentucky Welfare Rights Org.*, 426 U.S. 26, 37 (1976) (citing *Flast v. Cohen*, 392 U.S. 83, 95 (1968)); *Missouri, Kansas & Texas R. Co. v. Ferris*, 179 U.S. 602, 606 (1900) ("Moot questions require no answer."). In order to satisfy the case or controversy requirement, a plaintiff must establish they have standing to sue. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). Constitutional standing contains three essential elements: (1) a plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical'"; (2) there must be a causal connection between the injury and the conduct complained of; and (3) it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision." *Id.*;

---

[2] *See Sys. Pipe & Supply, Inc. v. M/V Viktor Kurnatovskiy*, 242 F.3d 322, 324 (5th Cir. 2001) ("When entry of default [judgment] is sought against a party who has failed to plead or otherwise defend, the district court has an affirmative duty to look into its jurisdiction both over the subject matter and the parties.'").

4

*see also* 42 U.S.C. § 2000cc-2(a) ("Standing to assert a claim or defense under [RLUIPA] shall be governed by the general rules of standing under article III of the Constitution."). Additionally, the "case-or-controversy requirement subsists through all stages of federal judicial proceedings, trial and appellate . . . it is not enough that a dispute was very much alive when suit was filed," the parties must retain a concrete interest in the outcome of the litigation throughout all stages of the proceedings. *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990) (citations omitted).

Mills's SAC alleges a violation of RLUIPA on specific dates in March and April of 2022, and he seeks monetary and injunctive relief. As noted above, under RLUIPA, injunctive or declaratory relief is the only relief a court may grant; a claimant may not seek monetary damages against a State. *Sossamon v. Texas*, 563 U.S. 277, 288 (2011). Additionally, where a plaintiff is seeking prospective declaratory and injunctive relief, the allegations in a complaint "of past injuries 'do[] not in [themselves] show a present case or controversy . . . if unaccompanied by any continuing, present adverse effects.'" *Nanni v. Aberdeen Marketplace, Inc.*, 878 F.3d 447, 454 (4th Cir. 2017) (citing *Lujan*, 504 U.S. at 564 (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)); *Nken v. Holder*, 556 U.S. 418, 428 (2009) ("When a court employs 'the extraordinary remedy of injunction,' *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982), it directs the conduct of a party, and does so with the backing of its full coercive powers." (citing Black's Law Dictionary 784 (6th ed. 1990) (defining "injunction" as "[a] court order prohibiting someone from doing some specified act or commanding someone to undo some wrong or injury"))); *see also Nelson v. Miller*, 570 F.3d 868, 882 (7th Cir. 2009) ("A court's power to grant injunctive relief only survives if such relief is actually needed. 'The necessary determination is that there exists some cognizable danger of recurrent violation, something more than the mere possibility.'" (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953))).[3]

---

[3] In the context of a default judgment, while a defendant's default "'admits the plaintiff's

5

The party invoking federal jurisdiction, in this case Mills, must establish all of the essential elements of standing. *Lujan*, 504 U.S. at 561. Federal courts are "constrained to exercise only the authority conferred by Article III of the Constitution and affirmatively granted by federal statute." *In re Bulldog Trucking, Inc.*, 147 F.3d 347, 352 (4th Cir. 1998). Because of the limited nature of federal jurisdiction, there is a presumption that a federal court lacks jurisdiction unless a party shows otherwise. *Lehigh Min. & Mfg. Co. v. Kelly*, 160 U.S. 327, 336 (1895). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

In reviewing the pleadings in this matter, it is apparent, for several reasons, that the Court could not provide Mills with the relief sought. First, as noted above, monetary relief is not available under RLUIPA. Second, the alleged injury occurred in March and April of 2022 and therefore cannot be addressed via injunctive relief,[4] and there is no reason, beyond speculation, to assume that there will be any future injuries—Defendant Hicks is no longer in any position of authority at LVCC,[5] and his employer, the GEO Group, also no longer has any authority over

---

well-pleaded allegations of fact'" the Court must also "'determine whether the well-pleaded allegations in [plaintiff's] complaint support the relief sought in th[e] action." *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001). However, "a defendant's default does not in itself warrant the court in entering a default judgment. There must be a sufficient basis in the pleadings for the judgment entered." *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).

[4] The Sixth Circuit, in a similar case, affirmed the district court's dismissal of a RLUIPA claim as moot because the plaintiff did not "allege a present or future injury," and instead only alleged injures that occurred in a previous Ramadan observance, and held that "'[w]ithout a time machine,'" the court could not "'go back' and fix alleged wrongs during Ramadan in 2018." *Heyward v. Cooper*, 88 F.4th 648, 656 (6th Cir. 2023) (citing *Lyons*, 461 U.S. at 102-03)(quoting *Thompson v. DeWine*, 7 F.4th 521, 524 (6th Cir. 2021)); *see Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n.22 (1997) ("The requisite personal interest that must exist at the commencement of the litigation . . . [and] must continue throughout its existence." (citations omitted)).

[5] As noted above, Defendant Hicks was not a VDOC employee, he no longer has any authority at LVCC, and the GEO-Group's contract with the VDOC ended on August 1, 2024. *See*

conditions or programs at LVCC.[6] Third, the company that employed Defendant Hicks, GEO Group, a private contractor, no longer has the contract to manage LVCC. Indeed, the VDOC assumed control of LVCC on August 1, 2024. Lastly, Mills was transferred from LVCC to Greensville Correctional Center on or about August 8, 2024. Dkt. No. 31 (Mills's Notice of Change of Address, dated August 8, 2024).

"[A]s a general rule, a prisoner's transfer or release from a particular prison moots his claims for injunctive and declaratory relief with respect to his incarceration there." *Rendelman v. Rouse*, 569 F.3d 182, 186 (4th Cir. 2009) (citations omitted). The circumstances that gave rise to Mills's RLUIPA claim no longer exist, and "the allegedly wrongful behavior could not reasonably be expected to recur," given the changes that have occurred during the pendency of this litigation.

---

*Virginia Department of Corrections Announces Closure of Four Facilities to Enhance Public Safety*, https://vadoc.virginia.gov/news-press-releases/2023/virginia-department-of-corrections-announces-closure-of-four-facilities-to-enhance-public-safety/ (last viewed on January 26, 2026). *See United States v. Garcia*, 855 F.3d 615, 621 (4th Cir. 2017) ("This court and numerous others routinely take judicial notice of information contained on state and federal government websites." (citing Fed. R. of Evid. 201(b))); *see, e.g., United States v. Google LLC*, 778 F. Supp. 3d 797, 859 n.28 (E.D. Va. 2025) (taking judicial notice of a U.S. Department of Justice press release announcing approval by antitrust regulators approval of acquisition). Defendant Hicks apparently retired from his position with the GEO Group prior to August 1, 2024. Dkt. 40 at 2. Consequently, Mills cannot show that there "is a reasonable expectation that [he] will be subject to the same action again." *Incumaa v. Ozmint*, 507 F.3d 281, 289 (4th Cir. 2007).

[6] *See Peters v. Davis*, 2019 WL 2484259, at *4 (E.D. Tex. Mar. 14, 2019) (case dismissed without prejudice because plaintiff-inmate, alleging a RLUIPA violation had "failed to establish the existence of a case or controversy against" two Texas Department of Criminal Justice employees because they no longer had any authority over plaintiff, and, under RLUIPA, the only available remedy was injunctive and therefore "any injunction granted by this Court against [the defendants] would be 'utterly meaningless'" (quoting *Okpalobi v. Foster*, 244 F.3d 405, 426-27 (5th Cir. 2001))), *report and recommendation adopted*, 2019 WL 1760080 (E.D. Tex. Apr. 20, 2019); *cf. Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) ("A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." (quoting *United States v. Concentrated Phosphate Export Assn., Inc.*, 393 U.S. 199, 203 (1968))); *see, e.g., Zajrael v. Harmon*, 677 F.3d 353, 355 (8th Cir. 2012) (per curiam) ("Because [plaintiff] is no longer subject to the policies that he challenges, there is no live case or controversy.").

7

*See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 189 (2000). Consequently, Mills's RLUIPA claim is moot, there is no longer a case or controversy, and this case is dismissed for lack of jurisdiction.

### IV. Conclusion

For the foregoing reasons, this civil action is dismissed as moot. An appropriate order will issue alongside of this Memorandum Opinion.

Entered this ___3rd___ day of ___February___ 2026.

Alexandria, Virginia

_____/s/_____
Rossie D. Alston, Jr.
United States District Judge